## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Criminal No. 21-79-RJC |
| vs. | ) |
| | ) Judge Robert J. Colville |
| SUSAN GILBERT, SAM HALPER, EVA | ) |
| HAMILTON, MICHELLE ROMEO, | ) |
| JOHNNA HALLER, COMPREHENSIVE | ) |
| HEALTHCARE MANAGEMENT | ) |
| SERVICES, LLC, d/b/a Brighton | ) |
| Rehabilitation and Wellness Center, and MT. | ) |
| LEBANON OPERATIONS, LLC d/b/a | ) |
| Mount Lebanon Rehabilitation and Wellness | ) |
| Center | ) |

## <u>MEMORANDUM OPINION</u>

Robert J. Colville, United States District Judge

Before the Court are Defendants', Comprehensive Healthcare Management Services, LLC

("Brighton") and Mt. Lebanon Operations, LLC's ("Mt. Lebanon") (collectively the "Corporate

Defendants"), Motion for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29 (ECF No. 377)

and Motion for a New Trial Pursuant to Fed. R. Crim. P. 33 (ECF No. 420).   For the reasons

discussed below, the Corporate Defendants' Motions will be denied.

## I.    INTRODUCTION

### A.  The Superseding Indictment

On August 15, 2022, a 15-count Superseding Indictment was returned against Defendants,

Sam Halper, Eva Hamilton, Susan Gilbert, Michelle Romeo, Johnna Haller, Brighton, and Mt.

Lebanon.[1]   Superseding Indictment, ECF No. 49.   The Superseding Indictment alleges that the

---

[1] The Government moved to dismiss Count 13, brought against Susan Gilbert, on November 10, 2023.  ECF No. 320. The Court granted the Motion to Dismiss on November 13, 2023.  ECF No. 326.

Corporate Defendants are skilled nursing facilities located in Western Pennsylvania that were both enrolled to participate in the Medicare and Medicaid programs. *Id.* at 2-5.

Brighton is charged in Counts II and III through VII and Mt. Lebanon is charged in Counts IX and X through XII. *Id.* Counts II and IX allege that Brighton and Mt. Lebanon, respectively, defrauded a health care benefit program in violation of 18 U.S.C. § 1035(a)(1). *Id.* at 15, 20. Specifically, Count II alleges that Brighton, from on or about July 18, 2018 to on or about January 22, 2020, knowingly and willfully falsified and covered up by trick, scheme, and device, a material fact, in connection with the delivery of any payment for health care benefits, items, and services involving a health care benefit program. *Id.* at 15. Further, Count IX alleges that Mt. Lebanon, from on or about November 13, 2019 to on or about February 20, 2020, knowingly and willfully falsified and covered up by trick, scheme, and device, a material fact, in connection with the delivery of any payment for health care benefits, items, and services involving a health care benefit program. *Id.* at 20.

18 U.S.C. § 1035(a)(1) provides:

(a)  Whoever, in any matter involving a health care benefit program, knowingly and willfully—

(1)  Falsifies, conceals, or covers up by any trick, scheme or device a material fact;

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1035(a).

Counts III through VII and X through XII allege that Brighton and Mt. Lebanon, respectively, violated 18 U.S.C. § 1519. *Id.* at 16, 23. Specifically, Counts III through VII allege that, on July 18, 2018, July 30, 2018, April 1, 2019, September 8, 2019, and January 22, 2020, Brighton knowingly falsified and made false entries in staffing records provided to the

Pennsylvania Department of Health ("DOH") during a federally mandated survey with the intent

to impede, obstruct, and influence the investigation and proper administration of a matter within

the jurisdiction of the Centers for Medicare and Medicaid Services ("CMS"), an agency of the

United States. *Id.* at 16.  Counts X through XII allege that, on November 13, 2019, January 3,

2020, and February 20, 2020, Mt. Lebanon knowingly falsified and made false entries in staffing

records provided to the DOH during a federally mandated survey with the intent to impede,

obstruct, and influence the investigation and proper administration of a matter within the

jurisdiction of CMS, an agency of the United States.  *Id.* at 23.

> 18 U.S.C. § 1519 provides:
>
> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or
> makes a false entry in any record, document, or tangible object with the intent to
> impede, obstruct, or influence the investigation or proper administration of any
> matter within the jurisdiction of any department or agency of the United States or
> any case filed under title 11, or in relation to or contemplation of any such matter
> or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519.

### B.  Evidence at Trial

The Government offered testimony from Evan Shulman, the Director of the Division of

Nursing Homes for CMS, and Susan Williamson, the Director of the Division of Care Facilities

for the DOH.  This testimony established that, in order for a nursing home to participate in the

Medicare and Medicaid programs, the facility must, among other things, allow "CMS, through

state survey agencies, [to] conduct unannounced surveys of the facilities annually."  12/8/2023

Trial Tr. 205:15-18 (Schulman), ECF No. 390.    The Pennsylvania DOH is responsible for

conducting these surveys in Pennsylvania and acts on behalf of both the DOH and CMS when

conducting these surveys.  *Id.* at 205:19-21; 11/20/2023 Trial Tr. 47:15-18 (Williamson), ECF No.

386.  These surveys are "investigation[s] to see if a facility is adhering to the regulatory

requirements" which include "a certification part for licens[ure]" in the Commonwealth of Pennsylvania and a federal certification "to participate in Medicare and Medicaid funding." 11/20/2023 Trial Tr. at 47:3-14.

As part of the surveys, "the surveyors . . . review the information related to the residents to see what level of care they need, what services they need, and determine whether or not there's an adequate number of staff [at the facility]" in order to comply with federal regulations. *Id.* at 72:1-12. The DOH uses staffing information or staffing records, including three-week staffing sheets, to determine whether a facility is in compliance with federal regulations. *Id.* at 75:5-11; 12/8/2023 Trial Tr. 206:10-25, 208:1-11. Pennsylvania also has regulations concerning staffing which "require[] that the facility have 2.7 PPD or number of hours provided for the resident care in a 24-hour period." 11/20/2023 Trial Tr. at 75:15-23. "The 2.7 PPD includes counting nursing staff that provide direct care to the resident" meaning "they have to be providing some sort of assistan[ce] to the resident." *Id.* at 75:20-25. If a facility falls below 2.7 PPD, the DOH may issue a deficiency notice. *Id.* at 77:19-21. That said, just because a facility meets the 2.7 PPD requirement for the Commonwealth, does not mean that the facility will meet the federal requirement of having sufficient staff. *Id.* at 77:22-78:3.

As stated above, when reviewing staffing requirements, the DOH reviews nursing care hour forms, on which the facility places the hours worked by various medical providers, along with the facility's staffing schedules. *Id.* at 89:15-91:10. The DOH relies on the accuracy of the staffing information during surveys. *Id.* at 94:4-17. Further, CMS expects that the information provided in a three-week staffing sheet is accurate and, if there are names of individuals on the staffing sheets who were not actually working, it makes it difficult for the DOH to determine whether the facility complies with the conditions of participation in Medicare and Medicaid.

12/8/2023 Trial Tr. 208:5-20.   Further, if a facility was intentionally putting names of employees on staffing sheets who were not in the building, the DOH would likely recommend and sign a sanction order against that facility.  11/20/2023 Trial Tr.  94:22-95:11.

If a facility is cited during any survey, for a deficiency or because the facility is not adhering to a regulation, then the DOH issues a statement of deficiency.  *Id.* at 48:25-49:3.  If a statement of deficiency is issued, "the facility is required to submit a plan of correction[,]" which the DOH reviews and, if approved, the facility must correct the deficiencies within a certain time period.  *Id.* at 56:7-24.  In response to a deficiency, the federal government may issue civil penalties for deficiencies, or, if the facility is "not back in compliance within 90 days[,]" the federal government will issue a "denial of payments for new admissions."  *Id.* at 57:7-58:4.  Further, if the facility is not in compliance within 180 days, it "may be removed from the program" meaning it can "no longer participate in Medicare and Medicaid."  *Id.* at 57:7-58:4.  Additionally, the Commonwealth of Pennsylvania may also issue sanctions including civil penalties, a provisional license, or a ban on admissions, although, a ban on admissions is rarely used.  *Id.* at 58:10-59:4, 195:23-197:6.  If a facility loses its state license, then it is unable to participate in Medicare and Medicaid.  *Id.* at 59:21-25.

During trial, the Government alleged that Brighton may be found liable for the acts of its agents, specifically, Sam Halper, the partial owner and CEO of Brighton; Eva Hamilton, the Director of Nursing ("DON") at Brighton; Susan Harrington, the Schedular and later the Administrative Assistant at Brighton; Thomas Lowden, the Administrator at Brighton; John Reichard, the Regional Director of Operations at Brighton and a Consultant at Western PA Consultants; and Jane Quinn, the Associate Director of Nursing ("ADON") at Brighton. 12/12/2023 Trial Tr. 258:1-2, ECF No. 385.

As to Brighton, numerous employees testified that the staffing sheets at issue contained their names when they were not working or providing direct patient care, along with the names of other individuals who were not working or providing direct patient care on the day in question. *See* 11/21/23 Trial Tr. 99:22-109:25 (Ashley Ifft, who was employed in a human resources capacity at Brighton, testified that she had never seen certain employees providing direct patient care who were listed on the July 18, 2018 survey (Government Exhibit 928) and the April 1, 2019 survey (Government Exhibit 956)); 11/28/23 Trial Tr. 199:22-23, 205:13-206:20, 207:11-208:24 (Jane Quinn testified that her name was added to a July 2018 survey on days that she did not work and, that while other employees' names were included on the July 2018 survey, she had never seen any of those employees provide direct patient care); 11/29/23 Trial Tr. 92:23-94:5, 103:18-104:2, ECF No. 363 (Julianne Dobish, a nurse and later a unit director at Brighton, testified that her name was added to a July 2018 survey on days she was on vacation).

Further, employees of Brighton, who were responsible for calculating PPD, testified that they were instructed to add names to the staffing sheets of individuals who were not working or were not providing direct patient care. *See* 11/28/23 Trial Tr. 202:17-25; 208:25-209:19, 211:17-18 (Jane Quinn testified that she was involved in calculating staffing for the DOH surveys and that Eva Hamilton told her to add names to staffing sheets of people who were not working in the building at that time in order to "boost the PPD"); 12/1/23 Trial Tr. 5:11-6:12, 23:15-25, 24:1-7, 25:2-15, 26:24-28:17, 30:8-31:7, ECF No. 388 (Susan Harrington testified that when Brighton did not have enough staff to meet PPD, she would inform Eva Hamilton who would instruct her to add the names of agency staff or administrative staff who were not working, or the names of administrative staff who were working but not providing direct patient care to the surveys in order to increase PPD. Harrington followed these instructions on multiple occasions, and when she

informed Sam Halper about her adding names to the staffing sheets Halper said, "Just keep doing what you're doing and I didn't hear you say that.").

Lastly, Stephanie Nusser, who was employed at Brighton until 2017 as both a social worker and the director of social services, testified that she was responsible for greeting the DOH surveyors and finding out what they needed. 11/16/23 Trial Tr. 137:8, 138:15-23, 161:7-21, ECF No. 349. Nusser testified that the department heads were responsible for giving all documents to Hamilton who then provided them to the DOH surveyors. *Id.* at 162:18-21. Towards the end of 2014, Hamilton told Nusser that she provided the documents to the DOH because she wanted to ensure that the DOH was getting the documents it needed and, that if the department heads could not find the documents, then Hamilton would "find" the documents. *Id.* at 162:23-163:8, 178:22-24. 181:5-12. Hamilton used air quotes around the word "find" when communicating to Nusser. *Id.* at 163:20-22.

Turning to Mt. Lebanon, the Government alleges that Mt. Lebanon may be found liable for the acts of its agents, specifically, Susan Gilbert, the Administrator at Mt. Lebanon; Margaret Zapor, the Regional Administrator at Mt. Lebanon; Yochanon Naiditch, the Assistant Director of Nursing and later the Director of Nursing at Mt. Lebanon; Martha Stillwagon, the Human Resources Director at Mt. Lebanon; Jacqueline Partee, the Assistant Director of Nursing at Mt. Lebanon; Tracie Benson, the Director of Medical Records at Mt. Lebanon; and Vivian Miller, the Director of Nursing at Mt. Lebanon. 12/12/2023 Trial Tr. 258:3-6, ECF No. 385.

Again, as to Mt. Lebanon, numerous employees testified that the staffing sheets at issue contained their names when they were not working or providing direct patient care, along with the names of other individuals who were not working or providing direct patient care on the day in question. *See* 11/29/23 Trial Tr. 175:9-23, 178:7-179:7, 180:4-13, 182:17-185:7, ECF No. 363

(Tracie Benson testified that while working as the manager on duty, she would provide approximately one hour of direct patient care; however, Jackie Partee, the then assistant director of nursing, informed Benson that her manager on duty hours would be used to calculate PPD. Benson spoke with Marty Stillwagon and Susan Gilbert, about her concerns over her hours being counted towards PPD and was told that "they could utilize any hours of anybody working in the building towards staffing and towards PPD." Further, Benson reviewed surveys from April 2019 (Exhibit 991B), September 2019 (Exhibit 991B), October 2019 (Exhibit 992D), November 2019 (Exhibit 987), December 2019 (Exhibit 987), and February 2020 (Exhibit 994) in which her name was listed as having provided direct patient care when she did not provide direct patient care); 11/30/23 Trial Tr. 16:15-17:13, 18:17-20:3, 20:4-22:10, 24:22-26:2, 26:9-27:22, 27:23-28:14, ECF No. 387 (Yochanan Naiditch testified that surveys from November 2019 (Exhibit 987), September 2018 (Exhibit 988), October 2018 (Exhibit 988), September 2019 (Exhibit 991B), October 2019 (Exhibit 992D), and February 2020 (Exhibit 994) in which his name, along with the names of other individuals, were listed as having provided direct patient care when they did not provide direct patient care).

Further, Naiditch, who was responsible for calculating PPD, testified that he and Stillwagon were instructed to add names to the staffing sheets of individuals who were not working or were not providing direct patient care. 11/30/23 Trial Tr. 14:8-17, 110:3-113:10 (Naiditch testified that he, along with Stillwagon, would add names to the staffing sheets, not with the intent to defraud the DOH or Medicare, but with the intent to meet the 2.7 PPD requirement).

Additionally, employees at Mt. Lebanon were directed to clock-in at work, on days they were not working, so that their hours could be counted towards PPD. 11/29/23 Trial Tr. 146:25-149:5; 151:16-153:2 (Vivian Miller testified that Susan Gilbert instructed her and the assistant

director of nursing, Yochanan Naiditch[2], to punch in to work but not punch out sometime in the fall

of 2018 because the hours were needed to meet PPD.  Miller complied with this request.); 11/30/23

Trial Tr. 10:10-24, 12:1-13, 15:16-25 (Naiditch testified that Martha Stillwagon told him that

"there was a possibility" he would need to clock-in, when he was not working, so the facility could

"utilize the hours."  Naiditch had conversations with Gilbert, about him punching in without

working and Naiditch's understanding was that Gilbert knew what he was doing.  Additionally,

Naiditch testified that he and Stillwagon directed other employees not to clock-out for lunch so

their hours could be counted towards PPD.    Naiditch believed Gilbert was aware of him giving

this directive.).

### C. Procedural History

During trial, before the Government rested, each of the Defendants informed the Court that

they intended to move for acquittal pursuant to Fed. R. Crim. P. 29.  Upon the Defendants' request,

the Court allowed the Defendants to file briefs addressing their Rule 29 Motions prior to the

Government resting.  11/30/23 Trial Tr. 239:17-240:10, ECF No. 387.  The Corporate Defendants

filed their joint Rule 29 Motion, along with Sam Halper, (ECF No. 377) on December 10, 2023

and, the Corporate Defendants reserved their right to supplement their Motion to address the

remainder of the Government's evidence.  Rule 29 Mot. 2, n.1.  The Government rested its case

on December 12, 2023.   12/12/23 Trial Tr. 38:1-9, 44:1-2, ECF No. 385.   Following the

Government resting its case in chief, counsel for Defendant, Sam Halper, made a formal Rule 29

motion on the record on behalf of all the Defendants.  *Id.* at 41:10-25.  The Government opposed

the Motions and the Court deferred its ruling.  *Id.* at 42:3-6.

---

[2] Miller specifically testifies that the assistant director of nursing's first name was "Yochi," but that she could not remember his last name.  11/29/24 Trial Tr. 152:8.  Based on other testimony in the case, including from Yochanan Naiditch himself, the Court believes it is clear that Yochi is Yochanan Naiditch.  11/30/23 Trial Tr. 5:19-20, ECF No. 387.

Then, on December 14, 2023, following closing arguments, the Court offered each of the Defendants the opportunity to present oral argument on their Rule 29 Motions. 12/14/23 Trial Tr. 131:24-132:12, ECF No. 398. Counsel for Eva Hamilton elected to provide oral argument and, following his argument, counsel for the Corporate Defendants joined said argument. *Id.* at 141:8-24. Then, each of the Defendants joined the other Defendants' Rule 29 Motions.[3] *Id.* at 147:25-148:19.

On December 19, 2023, the jury returned its verdict of guilty as to the Corporate Defendants, on all counts, and not guilty as to the individual Defendants, on all counts. ECF No. 407. Following the return of the verdict, the Court entered an Order dismissing the individual Defendants' Motions pursuant to Rule 29 and setting briefing deadlines on the Corporate Defendants' Rule 29 Motion. ECF No. 413. Then, on December 22, 2023, the Government filed its Response in Opposition (ECF No. 419) to the Corporate Defendants' Motion. On January 8, 2024, the Corporate Defendants filed their Reply. ECF No. 419.

Additionally, on December 19, 2023, the Court ordered the Corporate Defendants to file any post-trial motions by January 17, 2024. ECF No. 414. On January 17, 2024, the Corporate Defendants filed their joint Motion for a New Trial pursuant to Rule 33. ECF No. 420. On January 31, 2024, the Government filed its Response in Opposition. EC No. 421. On February 7, 2024, the Corporate Defendants filed their Reply. ECF No. 422.

These matters are fully briefed and ripe for consideration.

---

[3] The Court has reviewed the Rule 29 Motions filed by Eva Hamilton (ECF No. 379), Johnna Haller (ECF No. 380), Michelle Romeo (ECF No. 381), and Susan Gilbert (ECF No. 382). Upon review, the Court does not find that there are any arguments contained in the individual Defendants' Rule 29 Motions that are not addressed in the Corporate Defendants' Rule 29 Motion.

## II.    LEGAL STANDARD

### A.    Rule 29

With respect to a motion for judgment of acquittal bought pursuant to Fed. R. Civ. P. 29, the United States Court of Appeals for the Third Circuit has explained that:

> [A] district court must "'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty beyond a reasonable doubt based on the available evidence.'" *United States v. Smith,* 294 F.3d 473, 476 (3d Cir.2002) (quoting *United States v. Wolfe,* 245 F.3d 257, 262 (3d Cir.2001)).  A finding of insufficiency should be "'confined to cases where the prosecution's failure is clear.'"  *Smith,* 294 F.3d at 477 (quoting *United States v. Leon,* 739 F.2d 885, 891 (3d Cir.1984)).  Courts must be ever vigilant in the context of Fed. R. Crim. P. 29 not to usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury.  *See United States v. Jannotti,* 673 F.2d 578, 581 (3d Cir.) (en banc) (trial court usurped jury function by deciding contested issues of fact), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982); *see also* 2A Charles A. Wright, FED. PRAC. & PRO. (Criminal 3d) § 467 at 311 (2000) ("A number of familiar rules circumscribe the court in determining whether the evidence is sufficient ... It is not for the court to assess the credibility of witnesses, weigh the evidence or draw inferences of fact from the evidence.  These are functions of the jury.").

*U.S. v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005).

### B.    Rule 33

Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "Although the standard of review for a motion for a new trial is broader than that for acquittal, motions for new trials are disfavored and are only granted with great caution and at the discretion of the trial court." *United States v. Martinez*, 69 F. App'x 513, 516 (3d Cir. 2003) (citing *United States v. Allen*, 554 F.2d 398, 403 (10th Cir. 1977)).  In addressing the standard of review applied to a Rule 33 motion asserting that a verdict is against the weight of the evidence, the Third Circuit has explained:

> "A district court can order a new trial on the ground that the jury's verdict is contrary to the weight of evidence only if it 'believes that there is a serious danger

that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir.2002) (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir.1994)). "Thus, '[m]otions for a new trial based on the weight of the evidence are not favored. Such motions are to be granted sparingly and only in exceptional cases.'" *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir.2003) (alteration in original) (quoting *Gov't of V.I. v. Derricks*, 810 F.2d 50, 55 (3d Cir.1987)). When evaluating a Rule 33 motion, the district court "does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *Johnson*, 302 F.3d at 150.

*United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014). Where a defendant argues that the cumulative effect of trial errors denied the defendant a fair trial, "[a] new trial is required on this basis only when the errors, when combined, so infected the jury's deliberations that they had a substantial influence on the outcome of the trial." *United States v. Copple*, 24 F.3d 535, 547 (3d Cir. 1994) (quoting *United States v. Thornton*, 1 F.3d 149, 156 (3d Cir. 1993) (internal quotation marks omitted)).

## III.    DISCUSSION

The Court will address each of the Corporate Defendants' arguments and the relevant counts in turn. However, the Court begins by noting that many of the Corporate Defendants' arguments, in both its Rule 29 and Rule 33 Motions, do not directly concern whether the Government presented evidence by which a reasonable jury could find proof beyond a reasonable doubt. While this argument is certainly raised by the Corporate Defendants as to each count, the Corporate Defendants spend much of their Motions raising arguments concerning what the underlying law is and how the Court should interpret it. In the Court's estimation, many of these arguments were raised for the first time in the Corporate Defendants' Reply Brief in Support of their Rule 29 Motion, and later in their Rule 33 Motion, and were not raised during trial, in any pre-trial motion, or in any conversation or brief addressing jury instructions in this case. In the Court's view, these arguments, if shown to be meritorious and worthy of relief, should have been

raised at an earlier time, if this Court were to be expected to efficiently address the same. Even so, the Court will address each of the arguments below.

Additionally, the arguments raised by the Corporate Defendants in their Rule 29 Motion, particularly in their Reply Brief, and in their Rule 33 Motion are identical. Therefore, in the interest of brevity, the Court will address the Corporate Defendants' Motions together, while acknowledging that there is a separate standard of review applicable to each motion.

Lastly, because the Corporate Defendants are corporations, they may only act through their agents, which are their "officers, directors, employees, and other persons who are authorized by the corporation to act for it." Third Circuit Model Jury Instructions § 7.06. As stated above, the Government alleged that specific employees of both Brighton and Mt. Lebanon were their agents. The Court will therefore assume, only for the purpose of determining whether the Government presented evidence as to each count, that the alleged agents were agents of Brighton and Mt. Lebanon as argued by the Government. Then, once the Court completes its analysis as to each count, the Court will determine whether the Government presented sufficient evidence by which a reasonable jury could conclude that these employees were agents of the Corporate Defendants.

### A. Counts II and IX

As stated above, Counts II and IX allege that Brighton and Mt. Lebanon, respectively, defrauded a health care benefit program in violation of 18 U.S.C. § 1035(a)(1). Superseding Indictment, at 15, 20.

In order for the jury to find a defendant guilty of violating § 1035(a)(1), the government must prove each of these elements beyond a reasonable doubt that: (1) the defendant falsified; concealed; or covered up by trick, scheme, or device a fact in a matter involving a health care benefit program; (2) the fact was material; (3) the defendant did so knowingly and willfully; and

(4) the defendant did so in connection with the delivery of or payment for health care benefits, items, or services. *United States v. Advantage Medical Transport, Inc.*, 751 Fed. App'x 258, 261 (3d Cir. 2018).

The Corporate Defendants argue that the Government failed to prove all four elements against them. The Corporate Defendants also raise arguments about the underlying law, including how the Court should interpret "materiality" and "in connection with" under the statute. Therefore, the Court will address these two arguments on the law before addressing whether the Government has presented evidence by which a reasonable jury could find the Corporate Defendants guilty beyond a reasonable doubt as to Counts II and IX.

### i.    "Materiality"

The Court begins by determining the definition of "materiality" under § 1035(a)(1). As detailed by the Court in its November 9, 2024 Memorandum Order:

> The United States District Court for the Eastern District of Pennsylvania has explained:
>
>> In general, a false statement is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." [*United States v. Gaudin*, 515 U.S. 506, 509 (1995)]. The Third Circuit has clarified that the statement need not actually be relied on by the decisionmaking body, but need only be "of a type that one would normally predict would influence the given decisionmaking body." *United States v. McBane*, 433 F.3d 344, 351 (3d Cir. 2005).
>
> *United States v. Sivchuk*, Criminal Action No. 11–078–03, 2012 WL 2328143, at *7 (E.D. Pa. June 13, 2012); *see also United States v. Natale*, 719 F.3d 719, 737 (7th Cir. 2013) ("A proper instruction on the materiality element in § 1035 would require that false statements 'ha[ve] a natural tendency to influence, or [are] capable of influencing, the decision of' the health care benefit program.").

ECF No. 317, at 5.

In their Motions, the Corporate Defendants argue that materiality is a question of "whether there was sufficient evidence for the jury to conclude that the alleged falsehoods made to DOH were reasonably likely to affect Medicare and Medicaid payments, not whether they were reasonably likely to affect DOH's State-level decision-making (e.g., revocation of a facility's license or imposition of an admission ban), even if the latter indirectly affected future Medicare and Medicaid payments."[4]  Rule 29 Reply 5-6; Rule 33 Mot. 6.  Therefore, in the Corporate Defendants' view, the "decision of the health care benefit program" that the false statements must be capable of influencing is the payment of Medicare and Medicaid benefits.  In support of this, the Corporate Defendants point to testimony from Susan Williamson that they argue made clear that the DOH has both a "state hat" and a "federal hat" because the DOH completed both state licensure surveys as well as federal surveys for the certification of Medicare and Medicaid payments.  *Id.*  Therefore, the Corporate Defendants argue that any alleged falsehoods must have affected the DOH's "federal hat," i.e. Medicare and Medicaid payments.  Rule 29 Reply 6; Rule 33 Mot. 6.  Further, the Corporate Defendants argue that "[e]ven if the potential indirect effects from State-level sanctions" could be considered for materiality purposes, the testimony shows a highly improbable effect on the Corporate Defendants' ability to receive federal funds.  Rule 29 Reply 6-7.

The Court begins by noting both parties' inconsistent, and changing, definition of "materiality" throughout motions in limine, trial, and now, post-trial briefing.  The Court has attempted to provide consistent clarification around the meaning of "materiality" numerous times throughout trial, and will do so again following these new arguments surrounding the definition of

---

[4] The Court notes that in their Rule 29 Motion, the Corporate Defendants argue that the staffing sheets were not material to DOH because they were "merely a 'tool' to assist the facilities in tracking the hours they report to DOH" and "[t]his 'tool' is one small aspect of overall DOH surveys."  Rule 29 Mot. 10.  However, the Corporate Defendants' arguments concerning materiality shifted in their Rule 29 Reply Brief and Rule 33 Motion, as detailed above.

"materiality." The Court begins by rejecting the Corporate Defendants' definition of "materiality" in their Motions. The Corporate Defendants, in the Court's view, are attempting to combine the "materiality" element with the "in connection with the delivery of or payment for health care benefits, items, or services" element. They do so by arguing that the false statements are only material "if [they] had the tendency to affect Medicare and Medicaid payments." Rule 29 Reply 5. This is not the correct interpretation of the "materiality" element. [5]

As explained by the Eastern District of Pennsylvania in *Sivchuk*, when presented with a similar situation of a defendant attempting to collapse these two elements:

> The term "materiality" [in the statute] immediately precedes and modifies "false, fictious, or fraudulent," not "delivery of or payment for health care benefits, items, or services." Under the statute, the statement must be "materially false" and "in connection with the delivery of or payment for health care benefits"—the statement need not be material to the delivery of or payment for health-care benefits.

*Sivchuk*, Criminal Action No. 11–078–03, 2012 WL 2328143, at *8. This is further supported by the Seventh Circuit in *Natale*, which found that "[a] proper instruction on the materiality element in § 1035 would require that false statements 'ha[ve] a natural tendency to influence, or [are] capable of influencing, the decision of'" the health care benefit program. *Natale*, 719 F.3d at 737 (changes in original) (quoting *Kungsy v. U.S.*, 485 U.S. 759, 770 (1988)).

Therefore, the proper question in the Court's judgment is whether the Government proved, beyond a reasonable doubt, that the false statements made in staffing sheets were material to CMS (i.e., were the statements capable of influencing a decision of CMS). It does not matter, in the

---

[5] In fact, this argument is similar to a definition of materiality that the Government previously agued before the Court, to which the Corporate Defendants objected. The Government previously argued that evidence of poor patient care was admissible and did so by relying on a definition of materiality under which the Government was required to prove that the Corporate Defendants' falsifications were material to the delivery of health care services. 11/9/23 Memo Order, p. 5-6, ECF No. 317. The Court rejected that argument as well. *Id.*

Court's view, whether the statements were material to the delivery of or payment for health care benefits.

The Court acknowledges that the Corporate Defendants may instead be attempting to argue that the Government must prove that the decision of CMS that needs to be influenced by the false statement is the decision to provide Medicare and Medicaid payments. Again, the Court disagrees. In the Court's view, the Government must only prove that the false statement is capable of influencing *a decision* of CMS, not specifically the decision to provide Medicare and Medicaid payments.

This is supported by the Third Circuit's decision in *Advantage Medical Transport Inc.*, in which the Third Circuit held that the false statements were "material to a myriad of other government interests, such as, inter alia, corroborating contemporaneous ambulatory capabilities, preventing fraudulent transactions, verifying independent medical assessments and investigations, sentencing, and maintaining accurate medical records." *Advantage Medical Transport, Inc.*, 751 Fed. App'x at 261-62. It is further supported by the Eastern District of Pennsylvania's decision in *Sivchuk*, in which the court held that the false statement at issue was "material to and capable of influencing [the agency's] decision as to whether to reinstate" the individual excluded from being a Medicare service provider. *Sivchuk*, 2012 WL 2328143, at *5. The Seventh Circuit also agrees that the false statement is material if it is capable of influencing a decision of Medicare and not directly the decision to issue payment. *See* Natale, 719 F.3d at 725 (holding that falsifications in operative reports were material because "when Medicare audits claims, it sometimes requests operative reports" even if Medicare did not conduct an audit in this case or view the audit reports).

Therefore, in order to prove "materiality," the Government must present evidence that the falsifications were capable of influencing a decision of CMS, not specifically the decision to authorize Medicare and Medicaid payments.

### ii.    "In Connection With"

The Court now turns to the Corporate Defendants' arguments concerning the meaning of "in connection with the delivery of, or payment for, healthcare benefits, items, or services."  The Corporate Defendants argue that because "in connection with" is not defined in the statute or its legislative history, and because its interpretation has not been addressed by an appellate court, the Court should adopt the meaning of "in connection with" as it is defined in the securities fraud context.  Rule 29 Reply 11; Rule 33 Mot. 12-13.  In the securities fraud context, "in connection with" "requires that an alleged false or fraudulent statement 'coincide with' and be 'integral' to the actual purchase or sale of securities.  Rule 29 Reply 12; Rule 33 Mot. 13.

The Corporate Defendants rely, in part, on *United States v. Jones*, 471 F.3d 478 (3d Cir. 2006), arguing that the Third Circuit adopted a narrow application of "in connection with" when analyzing health care fraud in violation of 18 U.S.C. § 1347, similar to how it is understood in the securities fraud context.  In *Jones*, the defendant, an employee at a methadone clinic, was charged with health care fraud in violation of § 1347(2), which requires that the fraud be committed in connection with the delivery of or payment for health care benefits, items, or services.  471 F.3d at 480-81.  The allegations against the defendant were that, while she was working as a front counter clerk at the clinic, she would collect payments from the clients and deposit the payments at the bank.  *Id.* at 479.  It was further alleged that there was a discrepancy between the amount received and the amount deposited, and that the defendant had deposited substantial amounts of cash into her own bank account.  *Id.*

In *Jones*, the defendant argued that the alleged theft was not "in connection with the delivery of, or payment for, health care benefits, items, or services" because the theft occurred after the health care benefit was paid for and delivered. *Id.* at 480. The Third Circuit agreed that the Government did not prove health care fraud under § 1347 because "there was no misrepresentation made in connection with the delivery of, or payment of, health care benefits, items or services." *Id.* at 482. Further, the Third Circuit looked to the legislative history and observed that Congress passed an accompanying theft statute, meaning Congress could not have intended § 1347 to be interpreted to cover simple theft "merely because the theft was perpetrated by an employee of a health care benefit program." *Id.*

In reviewing the Third Circuit's decision in *Jones*, the Court does not find that *Jones* controls the analysis in this case. As explained by the Third Circuit in *U.S. v. Manamela*, 612 Fed. App'x 151 (3d Cir. 2015), *Jones* "was primarily focused on distinguishing fraud prohibited under 18 U.S.C. § 1347, from theft prohibited under 18 U.S.C. § 669." 612 Fed. App'x at 156. For this reason, the Third Circuit in *Manamela* went on to hold that, where a defendant was charged under § 1347 involving allegations that he had fabricated medical records and billed for services not rendered, the "in connection with" element was satisfied because the defendant was responsible for documenting the receipt of medical care, facilitating appointments, and assuring his clients were receiving medical care. *Id.* at 157.

The Third Circuit in *United States v. Bell*, 282 Fed. App'x 184 (3d Cir. 2008), relied upon by the Government, addressed the definition of "in connection with" under § 1035(a) and applied a similar understanding of this element as addressed by the Third Circuit in *Manamela*. In *Bell*, the defendant, who was employed by a nursing home, directed other employees to provide false statements to the DOH in connection with the death of a patient. 282 Fed. App'x at 188. The

Third Circuit found that the false statements were made in connection with the delivery of health care services because they were provided to the DOH in connection with an abuse investigation and, therefore, implicated the nursing homes Medicare and Medicaid funding.  *Id.*

The Government also points the Court to *Sivchuk*, a case involving a violation of § 1035(a), in which the Eastern District of Pennsylvania relied on the Third Circuit's analysis in *United States v. Loney*, 219 F.3d 281 (3d Cir. 2000), interpreting the phrase "in connection with" in the context of U.S.S.G. § 2K2.1(b)(5).  *Sivchuk*, 2012 WL 2328143, at *9.  The Third Circuit in *Loney* "concluded that in ordinary usage, the phrase 'in connection with' covers 'a wide range of relationships' and should be read 'broadly' and 'expansively' meaning it 'expresses some relationship or association, one that can be satisfied in a number of ways such as a causal or logical relation'"  *Id.*  The *Sivchuk* court noted that the Third Circuit had applied this definition of "in connection with" outside the scope of U.S.S.G. § 2K2.1(b)(5) as well.  *Id.*  Therefore, the court held that the "in connection with" element was satisfied where the fraudulent statements were made to agents during an investigation into whether an employee should be "reinstated as a provider of health-care services."  *Id.*

Therefore, based on the above case law, it is clear to the Court that "in connection with" should be interpreted broadly, as the Third Circuit has instructed.  Therefore, the Court finds that the Corporate Defendants' arguments that the Court should adopt the meaning of "in connection with" as it is defined in the securities fraud context is not supported by the law or a reading of the statute.

With the arguments on the underlying law addressed, the Court will now determine whether the Government has presented sufficient evidence by which the jury could reasonably find guilt beyond a reasonable doubt as Counts II and IX.

### iii.    Count II

Count II alleges that Brighton, from on or about July 18, 2018 to on or about January 22, 2020, knowingly and willfully falsified and covered up by trick, scheme, and device, a material fact, in connection with the delivery of any payment for health care benefits, items, and services involving a health care benefit program.  Superseding Indictment at 15.  The Government must prove each of the following elements beyond a reasonable doubt: (1) the defendant falsified; concealed; or covered up by trick, scheme, or device a fact in a matter involving a health care benefit program; (2) the fact was material; (3) the defendant did so knowingly and willfully; and (4) the defendant did so in connection with the delivery of or payment for health care benefits, items, or services.  *Advantage Medical Transport, Inc.*, 751 Fed. App'x at 261.

#### 1.    Materiality

First, the Court must determine whether evidence was presented that Defendant Brighton falsified, concealed, or covered up by any trick, scheme, or device a material fact.

The Government argues that testimony from Jane Quinn and Susan Harrington proves that Eva Hamilton asked them to put false names on the DOH staffing sheets during the relevant time period, and that Harrington complied with these instructions.  Rule 29 Resp. 9-10; Rule 33 Mot. 14-18.  Similarly, the Government argues that Harrington testified that Sam Halper was aware that this was happening.  *Id.*  The Government further argues that these false statements in the DOH staffing sheets were material because the DOH uses staffing sheets in order to determine a facility's compliance with the Medicare and Medicaid programs and false statements in these staffing sheets would impact the DOH surveyors' ability to do their jobs.  *Id.*  Further, if a facility is not in compliance, then the DOH and CMS can issue sanctions.  *Id.*

The Corporate Defendants argue that no reasonable jury could find that the alleged misrepresentations were material.  Rule 29 Mot. 9-10; Rule 29 Reply 4-8; Rule 33 Mot. 8-9.

Relying upon the analysis concerning the definition of "materiality" above, the Court finds that a reasonable jury could find that Hamilton, Halper, and Harrington falsified a material fact based on testimony that these individuals directed others to add names to staffing sheets, added names to staffing sheets themselves, and/or were aware that names were being added to staffing sheets.  Further, the Court finds that these false statements were material because there was testimony by which the jury could find that these false statements were capable of influencing a decision of CMS, specifically that the statements were capable of influencing CMS' conduct and decisions respecting a number of issues, including whether Brighton was in compliance with the Medicare and Medicaid programs.

## 2.  Knowingly and Willfully

Turning to the third element, the Corporate Defendants argue that there is insufficient evidence to find that any agent of Brighton acted knowingly and willfully.  Rule 29 Mot. 9; Rule 33 Mot. 10-11.  The Corporate Defendants argue that the Government must present evidence that an agent of Brighton acted with knowledge that his/her conduct was unlawful.  Rule 29 Mot. 9; Rule 29 Reply 8-9.  Therefore, the Corporate Defendants argue that it is not enough for the Government to prove that an agent of Brighton made a mistake when filling out the staffing sheets or that an agent took advantage of an ambiguity of the rules to meet PPD requirements.  Rule 29 Reply 9; Rule 33 Mot. 10.  Specifically, the Corporate Defendants argue that Sam Halper's "I didn't hear that" statement did not occur during a DOH survey and may not have even occurred during the charged period.  Rule 29 Reply 10; Rule 33 Mot. 11.  As to Eva Hamilton, the Corporate Defendants argue that her statement that she would "find the documents" is also not connected to

a specific DOH survey. *Id.* Lastly, as to Susan Harrington, the Corporate Defendants argue that while she may have felt her conduct was wrong, there is no evidence that she had the intent to do something the law forbids as she did not believe her conduct was criminal. *Id.*

The Government argues that it presented evidence that Sam Halper, Eva Hamilton, and Susan Harrington acted knowingly and willfully. Rule 29 Resp. 16; Rule 33 Resp. 18. As to Halper, the Government argues that it presented evidence that he knew that low staffing could result in federal staffing tags and that he knew lying to CMS was unlawful. Rule 29 Rep. 16; Rule 33 Mot. 20. Further, as to Halper, the Government argues that his "I didn't hear that" statement to Harrington provides circumstantial evidence that he knew adding names to staffing sheets was unlawful. *Id.* As to Hamilton, the Government argues that Nusser testified that Hamilton would "find" documents for the DOH surveys, and it was reasonable for the jury to conclude that Hamilton knew it was improper to "find" documents. Rule 29 Resp. 17; Rule 33 Resp. 21. Further, as to Hamilton, the Government argues that Harrington testified that Hamilton told her to falsify documents to meet the PPD requirement. *Id.* Lastly, as to Harrington, the Government argues that Harrington falsified staffing records knowing that the information was untrue, and it was not right. Rule 29 Resp. 18; Rule 33 Resp. 18-19.

"A [defendant] acts knowingly if [he or she] acts voluntarily and intentionally and not because of mistake or accident or other innocent reason." Third Circuit Model Criminal Jury Instructions § 5.02. "This means that the Government must prove beyond a reasonable doubt that [the particular defendant] was conscious and aware of the nature of his or her actions and of the surrounding facts and circumstances, as specified in the definition of the offenses charged." *Id.* To find that a defendant acted willfully, "the Government must prove beyond a reasonable doubt that [the particular defendant] acted with a purpose to disobey or disregard the law." Third Circuit

Model Criminal Jury Instructions § 5.05.  Conduct is not willful if it is due to inadvertence or mistake.  "Willfully does not, however, require proof that [the particular defendant] had any evil motive or bad purpose other than the purpose to disobey or disregard the law."  *Id.*

Here, the Government presented evidence by which a reasonable jury could conclude that agents of Brighton, specifically, Halper, Hamilton, and Harrington, acted knowingly and willfully. The Government presented evidence that the agents were falsifying records and/or were aware of the fact that records were being falsified.  Further, the Government presented evidence that the agents knew it was unlawful to falsify records and did so anyway, for the purpose of meeting PPD requirements.

### 3.  In Connection With

Turning to the last element, the Corporate Defendants argue, under their narrow definition of "in connection with," that the false statements were not made "in connection with the delivery of or payment for health care benefits, items, or services,'" because representations about PPD are not required in order to receive compensation for services rendered.  Rule 29 Reply 13; Rule 33 Mot. 14-15.  Instead, the Corporate Defendants argue that the statements were made during surveys which "at most were conducted to determine the facilities' future eligibility for payments."  *Id.* The Corporate Defendants further argue that the theoretical effect on future payments cannot be a basis to find the "in connection with" element.  Rule 29 Reply 14; Rule 33 Mot. 15.

The Government argues that the "in connection with" element was satisfied because "the false sheets were relied on by the DOH in conducting surveys to determine compliance with federal requirements governing the conditions of participation in Medicare and Medicaid."  Rule 29 Resp. 19; Rule 33 Resp. 26.

As stated above, the Third Circuit has broadly interpreted "in connection with" and only requires that there be some relationship to the delivery of, or payment for, health care benefits, items, or services. Therefore, the Court finds that a reasonable jury could have concluded that the false statements on the survey sheets were made "in connection with the delivery of, or payment for, healthcare benefits, items, or services." The false statements were made during the DOH surveys which determined, at least in part, whether Brighton would be allowed to continue participating in Medicare and Medicaid, i.e. whether Brighton would be allowed to continue delivering healthcare services and receive payment for healthcare services.

Therefore, the Court finds that the Government has presented evidence by which a reasonable jury could conclude that the elements of Count II were proven beyond a reasonable doubt, and the Corporate Defendants' Rule 29 Motion as to Count II is denied. Additionally, the Corporate Defendants have failed to prove that the jury's verdict as to Count II is against the weight of the evidence, and the Corporate Defendants' Rule 33 Motion as to Count II is denied.

### iv.    Count IX

Count IX alleges that Mt. Lebanon, from on or about November 13, 2019 to on or about February 20, 2020, knowingly and willfully falsified and covered up by trick, scheme, and device, a material fact, in connection with the delivery of any payment for health care benefits, items, and services involving a health care benefit program. Superseding Indictment at 20.

### 1.    Materiality

First, the Court must determine whether evidence was presented that Defendant Mt. Lebanon falsified, concealed, or covered up by any trick, scheme, or device a material fact.

The Government argues that testimony from Tracie Benson and Yochanan Naidtich proves that Susan Gilbert, Margot Zapor, and Marty Stillwagon instructed them to put false names on the

DOH staffing sheets during the relevant time period and/or were aware that the staffing sheets were being falsified, and that Naiditch did in fact falsify these documents.  Rule 29 Resp. 24-25. The Government further argues that these false statements in the DOH staffing sheets were material because DOH uses staffing sheets in order to determine a facilities compliance with the Medicare and Medicaid programs and false statements in these staffing sheets would impact the DOH surveyors' ability to do their jobs.  *Id.* at 26.  Further, if a facility is not in compliance, the DOH and CMS can issue sanctions.  *Id.*

Again, the Corporate Defendants argue that no reasonable jury could find that the alleged misrepresentations were material.  Rule 29 Mot. 9-10; Rule 29 Reply 4-8; Rule 33 Mot. 8-9.

Relying on the analysis concerning the definition of "materiality" above, the Court finds that a reasonable jury could find that Gilbert, Stillwagon, Zapor, and Naiditch falsified a material fact based on testimony that these individuals directed others to add names to staffing sheets, added names to staffing sheets themselves, and/or were aware that names were being added to staffing sheets.  Further, the Court finds that these false statements were material because there was testimony by which the jury could find that these false statements were capable of influencing a decision of CMS, specifically that the statements were capable of influencing CMS' decision that Mt. Lebanon was in compliance with the Medicare and Medicaid programs.

## 2.  Knowingly and Willfully

Turning to the third element, the Corporate Defendants argue that there is insufficient evidence to find that any agent of Defendant Mt. Lebanon acted knowingly and willfully, and further raise many of the same arguments discussed above in Count II.  Rule 29 Mot. 9; Rule 33 Mot. 10-11.  Specifically, as to Mt. Lebanon, the Corporate Defendants argue that the Government failed to prove that Susan Gilbert, Margaret Zapor, Yochanan Naiditch, Martha Stillwagon,

Jacqueline Partee, Tracie Benson, or Vivian Miller acted knowingly and willfully.  Rule 29 Mot. 11; Rule 33 Mot. 12.  As to Naiditch, the Corporate Defendants argue that his testimony does not support willfulness and that he testified that he had no intent to defraud any agency on Mt. Lebanon's behalf.  *Id.*  Further, as to Partee, the Corporate Defendants argue that a letter she sent accusing Mt. Lebanon of illegality does not prove that any agent of Mt. Lebanon had "intent to disobey the law."  *Id.*

The Government argues that it presented testimony from Naiditch that he thought Stillwagon's request that he clock-in, even when he was not working, was "odd" and "didn't seem right."  Rule 29 Resp. 26.  Further, Naiditch testified that he falsified staffing records to meet PPD requirements and regrets his role in the scheme.  *Id.*  The Government additionally argues that it can be inferred that Naiditch, a trained DON, and Gilbert, an Administrator, knew that it was improper to add the names of individuals not working.  *Id.* at 27.  The Government argues it also presented testimony from Partee that she wrote a letter to Naiditch, Gilbert, and Stillwagon saying that "[y]our building has illegally used hours to meet PPD."  *Id.* at 26; Rule 33 Mot. 24-25.

The Court described the standard the Government must meet to prove that a defendant acted knowingly and willfully under Count II and will not repeat that standard here.

Here, the Government presented evidence by which a reasonable jury could conclude that agents of Mt. Lebanon, specifically, Naiditch, Gilbert, Zapor, Stillwagon, Benson, and Partee acted knowingly and willfully.  The Government presented evidence that the agents were falsifying records and/or were aware records were being falsified.  Further, the Government presented evidence that the agents knew it was unlawful to falsify records and did so anyway, for the purpose of meeting PPD requirements.

### 3.  In Connection With

The Corporate Defendants raise the same arguments concerning the "in connection with" element as they did for Count II.  Therefore, for the reasons stated by the Court in its discussion on Count II, the Court finds that a reasonable jury could have concluded that the false statements on the survey sheets were made "in connection with the delivery of, or payment for, healthcare benefits, items, or services."  The false statements were made during the DOH surveys which determined whether Mt. Lebanon would be allowed to continue participating in Medicare and Medicaid, i.e. whether Mt. Lebanon would be allowed to continue delivering healthcare services and receive payment for healthcare services.

Therefore, the Court finds that the Government has presented evidence by which a reasonable jury could conclude that the elements of Count IX were proven beyond a reasonable doubt, and the Corporate Defendants' Rule 29 Motion as to Count IX is denied.  Additionally, the Corporate Defendants have failed to prove that the jury's verdict as to Count IX is against the weight of the evidence, and the Corporate Defendants' Rule 33 Motion as to Count IX is denied.

### B.  18 U.S.C. § 1519

As stated above, Counts III through VII and X through XII allege that Brighton and Mt. Lebanon, respectively, violated 18 U.S.C. § 1519.  Superseding Indictment, at 16, 23.

In order for the jury to find a defendant guilty of violating § 1519, the government must prove that the defendant "knowingly falsified documents and did so with the intent to 'impede, obstruct, or influence the investigation or proper administration of [the Medicare and Medicaid programs, in relation to any matter]' that happens to be within federal jurisdiction." *U.S. v. Moyer*, 674 F.3d 192, 209 (3d Cir. 2012).

As with Counts II and IX, the Corporate Defendants again raise arguments about the underlying law in Counts III through VII and X through XII, in addition to arguments that the Government failed to prove all the elements against them. The Corporate Defendants' arguments about the underlying law include how the Court should interpret the words "matter" or "investigation" in the statute; that the Government was required to prove that the false statements were connected to the payment of healthcare benefits; and that the Government was required to prove that the Corporate Defendants "reasonably foresaw" that the matter was federal in nature. Therefore, the Court will address these three arguments on the law before addressing whether the Government has presented evidence by which a reasonable jury could find the Corporate Defendants guilty beyond a reasonable doubt as to Counts III through VII and X through XII.

### i. "Matter" or "Investigation"

18 U.S.C. § 1519 provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence *the investigation or proper administration of any matter* within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519 (emphasis added).

The Corporate Defendants argue that the Government failed to prove that the DOH surveys at issue were a "matter" or an "investigation" as required by §1519. Specifically, the Corporate Defendants argue that the statute itself is ambiguous and the legislative history contains conflicting evidence about what "matter" means. Rule 29 Reply 16; Rule 33 Mot. 17. Therefore, the Corporate Defendants argue that the Court should look to analogous statutes and adopt the meaning of "matter" or "investigation" as used in the mail or wire fraud context. Rule 29 Reply

15; Rule 33 Mot. 16.  The Corporate Defendants argue that in *McDonnell v. United States*, 579 U.S. 550 (2016), the Supreme Court held that, in the wire fraud context, the use of the word "'matter' refers only to 'a formal exercise of governmental power' that 'is similar in nature to a lawsuit before a court, a determination before an agency, or a hearing before a committee.'"  *Id.* (quoting *McDonnell*, 579 U.S. at 569, 574).

The Court first notes that in *McDonnell*, when interpreting the meaning of the word "matter," the Supreme Court looked to the context within which that word appeared in the applicable statute.  In the statute at issue in *McDonnell*, the word "matter" appeared next to the words "cause, suit, proceeding or controversy" and, for this reason, the Supreme Court adopted a narrow meaning of the word "matter."  *McDonnell*, 579 U.S. at 569.  Here, § 1519 does not contain language sufficiently similar to the statute at issue in *McDonnell*, upon which the Court could rely to hold that it would be appropriate to adopt a similarly narrow interpretation of the word "matter."

Further, the Court disagrees with the Corporate Defendants' argument, in general, that the Court should look to the wire or mail fraud statutes because the plain language of § 1519 along with the legislative history of § 1519 clearly speak to how the words "matter" or "investigation" should be interpreted.  In coming to this decision, the Court looks to the well-reasoned analysis of the D.C. District Court in *U.S. v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020), aff'd, -- F.4 --, 2024 WL 2225339 (D.C. Cir. May 17, 2024).  In *Saffarinia*, the defendant, charged with violating § 1519, raised the same arguments as the Corporate Defendants concerning the meaning of "matter" or "investigation."  424 F. Supp. 3d at 72.  In analyzing the defendant's arguments, the *Saffarinia* court first looked to the plain language of § 1519 and found that "[w]hile it is true that § 1519 does not define the word 'investigation' or the phrase 'proper administration of any matter,' 'Congress is presumed to use words in the common, ordinary meaning absent contrary

indication.'" *Id.* at 73-74 (cleaned up) (quoting *United States v. Hite*, 769 F.3d 1154, 1161 (D.C. Cir. 2014)). The *Saffarinia* court then went on to define "investigation" and "matter" under their ordinary meanings as defined in the Black's Law Dictionary. *Id.* at 74.

> The term "investigation" has a broad meaning. It has been commonly defined as: The activity of trying to find out the truth about something, such as crime, accident, or historical issue; esp[ecially], either an authoritative inquiry into certain facts, as by a legislative committee, or a systematic examination of some intellectual problem or empirical question, as by mathematical treatment or use of the scientific method.

*Id.* (quoting *Investigation*, Black's Law Dictionary (11th ed. 2019)).

> The term "matter" commonly means "[a] subject under consideration, esp[ecially] involving a dispute or litigation." *Matter*, Black's Law Dictionary (11th ed. 2019); *see also Matter*, Oxford English Dictionary (3d ed. 1991) (defining "matter" as "[a] subject of contention, dispute, litigation, etc.").

*Id.* at 75. Based on these definitions, the *Saffarinia* court rejected the defendant's arguments that the court should adopt a narrow interpretation of "investigation" and "matter" because, while the examples provided in the definitions may be narrow, the use of the word "especially" in the definition makes it clear that "the list of examples in the definition [are] non-exhaustive." *Id.* at 74, 76.

The *Saffarinia* court then went on to analyze the legislative history of § 1519, including the following language from the report from the Senate Judiciary Committee:

> Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, and such matter is within the jurisdiction of an agency of the United States, or such acts done either in relation to or in contemplation of such a matter or investigation. This statute is specifically meant not to include any technical requirement, which some courts have read into other obstruction of justice statutes, to tie the obstructive conduct to a pending or imminent proceeding or matter. It is also sufficient that the act is done "in contemplation" of or in relation to a matter or investigation. It is also meant to do away with the distinctions, which some courts have read into obstruction statutes, between court proceedings, investigations, regulatory or administrative proceedings (whether formal or not), and less formal government inquiries,

> regardless of their title. Destroying or falsifying documents to obstruct any of these types of matters or investigations, which in fact are proved to be within the jurisdiction of any federal agency are covered by this statute.

*Id.* at 78 (quoting S. Rep. No. 107-146, 14-15 (2002) (footnote omitted)).  The *Saffarinia* court also looked to the "Additional Views" section, under which eight Senators offered clarification of their intent and understanding:

> We recognize that section 1519 overlaps with a number of existing obstruction of justice statutes, but we also believe it captures a small category of criminal acts which are not currently covered under existing laws–for example, acts of destruction committed by an individual acting alone and with the intent to obstruct a future criminal investigation.
>
> We have voiced our concern that section 1519, and in particular, the phrase "or proper administration of any matter within the jurisdiction of any department or agency of the United States" could be interpreted more broadly than we intend. In our view, section 1519 should be used to prosecute only those individuals who destroy evidence with the specific intent to impede or obstruct a pending or future criminal investigation, a formal administrative proceeding, or bankruptcy case. It should not cover the destruction of documents in the ordinary course of business, even where the individual may have reason to believe that the documents may tangentially relate to some future matter within the conceivable jurisdiction of an arm of the federal bureaucracy.

*Id.* at 78-79 (quoting S. Rep. No. 107-146, 27 (2002)).

Based on the entirety of the legislative history, the *Saffarinia* court held that Congress clearly referred to the "proper administration of any matter" language and "supplied a legislative history that indicated a contemplation of the broad meaning of that phrase." *Id.* at 79 (internal citations omitted).  The Court went on to hold that "the Senate Judiciary Committee's report indicates that Section 1519 does not draw a distinction between a formal proceeding and a less formal government inquiry." *Id.*

As stated above, the Court agrees with the analysis of the D.C. District Court and its holding that the plain language of § 1519 and the legislative history support a broad interpretation

of the meaning of "matter" or "investigation" under the statute. The Court therefore denies the Corporate Defendants' argument that the Court should adopt a narrow interpretation of the words "matter" or "investigation" and the argument that § 1519 is ambiguous. Rule 29 Reply 15-16.

### ii. Connected to the Payment of Healthcare Benefits

The Court now turns to the Corporate Defendants' second argument on the law that the Government is required to prove that the misstatements in the DOH surveys were connected to the payment of healthcare benefits. Rule 29 Reply 14. Specifically, the Corporate Defendants argue that "materiality" should be an element of § 1519.[6] Rule 29 Reply 17; Rule 33 Mot. 18. However, acknowledging that the Third Circuit has clearly held that "materiality" is not an element of § 1519, *United States v. Moyer*, 674 F.3d 192, 207-08 (3d Cir. 2012), the Corporate Defendants acknowledge that they are raising this argument only for the purpose of preservation. *Id.*

Even so, the Corporate Defendants further argue, that § 1519 requires some proof that the falsehood had some potential effect on an "investigation or proper administration of any matter within the jurisdiction of any department of agency of the United States." *Id.* Specifically, the Corporate Defendants argue that "there was insufficient evidence that the defendants' alleged falsehoods had any capacity to impede, obstruct, and influence the investigation and proper administration of CMS related to Medicare or Medicaid." *Id.*

The Court disagrees. The Corporate Defendants have cited no support for their position that there is a requirement that the Government prove that the false statements at issue had the ability to impede, or had some potential effect on, the investigation or proper administration of any

---

[6] This argument from the Corporate Defendants is understandably brief, given their assertions that it is only raised for preservation purposes. While the Corporate Defendants do not specifically address how "materiality" would apply as an element of § 1519, the Court can only assume that the Corporate Defendants believe it should apply in the same way they argued under § 1035(a). The Court, for the reasons discussed above under its analysis of § 1035, disagrees with the Corporate Defendants' understanding of "materiality."

matter.  The language of § 1519 is clear.  As stated by the Third Circuit in *Moyer*, "[i]n looking at the language of the statute, § 1519 "rather plainly criminalizes the conduct of an individual who (1) knowingly (2) makes a false entry in a record or document (3) with the intent to impede or influence a federal investigation."  *Moyer*, 674 F.3d at 211.  The Court therefore, will not read an additional element into the offense, that the false statement have some effect on the investigation or matter, as argued by the Corporate Defendants.

Even so, the Court notes that the Government does not directly object to the Corporate Defendants' argument and instead argues that the Government has presented evidence that there was a relationship between the falsifications and the jurisdiction of CMS.  Rule 33 Mot. 29-30.  While the Court disagrees that such a requirement is necessary, the Court agrees with the Government that if such a requirement was necessary, the Government has met that burden.

### iii.   "Reasonably Foresaw" that the Matter was Federal

Turning to the Corporate Defendants' last argument on the law, the Corporate Defendants acknowledge that the Third Circuit has held that § 1519's *mens rea* requirement "does not require proof of a specific intent to impede, obstruct, or influence a *federal government* 'matter.'"  Rule 29 Reply 18; Rule 33 Mot. 19 (citing *Moyer*, 674 F.3d at 208-10).  However, the Corporate Defendants argue that "*Moyer* did not address whether § 1519 requires, as part of the *mens rea* element, that a defendant at least 'reasonably foresaw' that the matter was federal (or governmental at any level) in nature."  *Id.*

The Court disagrees with the Corporate Defendants' position.  The Third Circuit was clear in *Moyer* that, under a plain reading of § 1519, "the government [ ] need not prove that [the defendant] actually knew that the 'matter' at issue was within the jurisdiction of the federal government when he falsified documents."  *Moyer*, 674 F.3d at 209.  When presented with the

argument that the *mens rea* element extends to whether a defendant knew that the matter at issue was within the jurisdiction of the federal government, the Third Circuit held the following:

> The most natural reading of § 1519, which we accept, is to interpret "knowingly" as modifying its surrounding verbs only: "alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry." 18 U.S.C. § 1519; *see also United States v. Yielding*, 657 F.3d 688, 714 (8th Cir.2011). Although the Supreme Court has occasionally interpreted "knowingly" more broadly when scienter is not otherwise expressed in the criminal statute, *see, e.g., United States v. X–Citement Video, Inc.*, 513 U.S. 64, 69–70, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994), that "concern[] [is] not present here," because § 1519 expressly "requires proof that an accused *knowingly* falsified a document, with *intent* to impede, obstruct, or interfere with the investigation or proper administration of a matter," [*U.S. v. Yielding*, 657 F.3d 688, 714 (8th Cir. 2011)]. "By the plain terms of § 1519, knowledge of a pending federal investigation or proceeding is not an element of the obstruction crime." *[U.S. v. Gray,* 642 F.3d 371, 378 (2d Cir. 2011)].
>
> Indeed, "[i]t is well settled that mens rea requirements typically do not extend to the jurisdictional elements of a crime—that 'the existence of the fact that confers federal jurisdiction need not be one in the mind of the actor at the time he perpetrates the act made criminal by the federal statute.'" *United States v. Cooper,* 482 F.3d 658, 664 (4th Cir.2007) (quoting *United States v. Feola,* 420 U.S. 671, 677 n. 9, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975)). The government therefore need not prove that [the defendant] actually knew that the "matter" at issue was within the jurisdiction of the federal government when he falsified documents. It need only prove that he knowingly falsified them.

*Moyer*, 674 F.3d at 208-09.

Based on the above analysis from the Third Circuit, the Court finds that the Third Circuit has clearly addressed whether there is a requirement that a defendant knew or "reasonably foresaw" that the matter at issue was within the jurisdiction of the federal government. The Third Circuit is clear that § 1519 does not require any knowledge that the matter was within the jurisdiction of the federal government.

With the arguments on the underlying law addressed, the Court will now determine whether the Government presented sufficient evidence by which the jury could reasonably find guilt beyond a reasonable doubt as to Counts III through VII and X through XII.

### iv.  Counts III through VII

Counts III through VII allege that, on July 18, 2018, July 30, 2018, April 1, 2019, September 8, 2019 and January 22, 2020, respectively, Brighton knowingly falsified and made false entries in a staffing record provided to the DOH during a federally mandated survey with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of CMS, an agency of the United States.  Superseding Indictment 16.

The government must prove that the defendant "knowingly falsified documents and did so with the intent to 'impede, obstruct, or influence the investigation or proper administration of [the Medicare and Medicaid programs, in relation to any matter]' that happens to be within federal jurisdiction."  *U.S. v. Moyer*, 674 F.3d at 209.

Specifically, as to Counts III through VII, the Corporate Defendants argue that the Government failed to prove that the DOH surveys were a "matter" or "investigation" and that the Corporate Defendants had a specific intent to impede, obstruct, or influence a federal matter.  Rule 29 Reply 15-19; Rule 33 Mot. 16-19.

The Government argues that Susan Harrington and Eva Hamilton, agents of Defendant Brighton, committed all of the elements of § 1519.  Rule 29 Resp. 22.  Specifically, the Government argues that it presented evidence that Harrington and Hamilton fraudulently added names to the DOH staffing sheets with the intent to impede, obstruct, or influence the proper administration of a matter, the matter being surveys to determine compliance with the Medicare and Medicaid programs.  *Id.*  Further, the Government argues that it presented evidence that these falsifications occurred on each of the charged dates.  *Id.*  Specifically, the Government argues that the surveys from July 18, 2018 (Government Exhibit 928), July 30, 2018 (Government Exhibit 940), April 1, 2019 (Government Exhibit 956), and September 8, 2019 (Government Exhibit 961),

contain the names of individuals not working, and corroborate the testimony of Harrington, that she added names of employees not in the building during these time periods. *Id.* at 22-23. Further, the Government argues that the survey from January 22, 2020 (Government Exhibit 955) corroborates the testimony from Quinn that Hamilton asked her to add names of employees not in the building in early 2020, and, imply or support the inference that when Quinn refused, Hamilton added the names herself. *Id.* at 23.

The Court agrees with the Government's analysis of the evidence in this case. The Government presented testimony from Susan Harrington and Jane Quinn, who were both involved in calculating PPD for the DOH surveys, that they were instructed by Eva Hamilton to add the names of staff who were not working or not providing direct patient care to the DOH staffing sheets during the time periods at issue. 12/1/23 Trial Tr. 24:1-7, 25:9-15, 26:24-27:11, 27:22-28:17; 11/28/23 Trial Tr. 202:17-25; 208:25-209:19, 211:17-18. Further, the Government presented testimony from numerous witnesses, including Ashley Ifft, Jane Quinn, and Julianne Dobish, that their names appeared on staffing sheets during the time periods at issue, along with the names of other employees, even when they were not working or providing direct patient care. 11/21/23 Trial Tr. 99:22-109:25; 11/28/23 Trial Tr. 207:11-208:24; 11/29/23 Trial Tr. 92:23-94:5, 103:18-104:2. Lastly, the Government introduced the DOH staffing sheets at issue from July 18, 2018 (Government Exhibit 928), July 30, 2018 (Government Exhibit 940), April 1, 2019 (Government Exhibit 956), and September 8, 2019 (Government Exhibit 961), which these witnesses reviewed and testified to as containing names of individuals who were not working or were not responsible for providing direct patient care. Therefore, based on this evidence, a reasonable jury could have concluded that Harrington and Hamilton knowingly falsified documents.

Next, the Government presented evidence that Harrington and Hamilton falsified these documents "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter."  Harrington testified that Eva Hamilton told her that names needed to be added to the staffing sheets so that Brighton could meet PPD requirements.  12/1/23 Trial Tr. 25:9-11.  Further, Harrington testified Hamilton informed her that Brighton would be fined or would have to stop accepting admissions if it did not meet PPD requirements.  *Id.* 25: 19-25.  Therefore, it may be reasonably inferred that the agents acted with the specific intent to impede, obstruct, or influence the matter at issue.

Further, based on the Court's above analysis concerning the meaning of "matter" or "investigation" under § 1519, the Court agrees with the Government that the DOH surveys were a "matter" under the statute.  Rule 33 Resp. 27-29.

Lastly, the matter was within federal jurisdiction.  As stated above, the Government is not required to prove that the Corporate Defendants, through their agents, knew that the matter was within federal jurisdiction, instead, the Government must only prove that the matter "happen[ed] to be within federal jurisdiction." *Moyer*, 674 F.3d at 209.  Here, there was sufficient evidence for a reasonable juror to conclude that the DOH surveys were within the federal jurisdiction of CMS.

Therefore, the Court finds that the Government has presented evidence by which a reasonable jury could conclude that the elements of Counts III through VII were proven beyond a reasonable doubt, and the Corporate Defendants' Rule 29 Motion as to Counts III through VII is denied.  Additionally, the Corporate Defendants have failed to prove that the jury's verdict as to Counts III through VII is against the weight of the evidence, and the Corporate Defendants' Rule 33 Motion as to Counts III through VII is denied.

### v.  Counts X through XII

Counts X through XII allege that, on November 13, 2019, January 3, 2020, and February 20, 2020, respectively, Mt. Lebanon knowingly falsified and made false entries in a staffing record provided to the DOH during a federally mandated survey with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of CMS, an agency of the United States.  Superseding Indictment 23.

Specifically, as to Counts X through XII, the Corporate Defendants argue that the Government failed to prove the DOH surveys were a "matter" or "investigation" and that the Corporate Defendants had a specific intent to impede, obstruct, or influence a federal matter.  Rule 29 Reply 15-19; Rule 33 Mot. 16-19.

The Government argues that it presented evidence that Susan Gilbert, Yochannan Naiditch, and Martha Stillwagon falsified staffing sheets by adding names of individuals who were not working or names of individuals who did not provide patient care.  Rule 29 Resp. 29.  Further, the Government argues that it presented evidence of the DOH surveys from November 13, 2019 (Government Exhibit 992D), January 3, 2020 (Government Exhibit 987), and February 20, 2020 (Government Exhibit 994), that witnesses, including Naiditch and Tracie Benson, testified that their names, and the names of other employees, were added to these DOH surveys.  Rule 29 Resp. 27-29.

Again, based on a review of the evidence in this case, the Court agrees with the Government's summary of the evidence at issue.  The Government presented testimony from Naiditch that he and Stillwagon added the names of staff who were not working, or were not providing direct patient care, to the staffing sheets and instructed staff who were not working to clock in at work so their hours could be counted.  11/30/23 Trial Tr. 14:8-17, 15:16-25.  Naiditch

further testified that he believed that Gilbert was aware that names were being added to the staffing sheets and employees were being instructed to clock in on days they were not working. *Id.* at 12:1-13, 16:11-14. Further, the Government presented testimony from Naiditch and Tracie Benson that their names appeared on staffing sheets, along with the names of other staff, even when they were not working or providing direct patient care. 11/30/23 Trial Tr. 13:8-14:1, 11/29/23 Trial Tr. 182:17-185:7. Benson also testified that she spoke with Marty Stillwagon and Susan Gilbert about her concerns over her hours being counted towards PPD and was told that "they could utilize any hours of anybody working in the building towards staffing and towards PPD." 11/29/23 Trial Tr. 180:4-13. Lastly, the Government introduced the DOH staffing sheets at issue from November 13, 2019 (Government Exhibit 992D), January 3, 2020 (Government Exhibit 987), and February 20, 2020 (Government Exhibit 994), which these witnesses reviewed and testified to as containing names of individuals who were not working or were not responsible for providing direct patient care. Therefore, based on this evidence, a reasonable jury could have concluded that Naiditch, Gilbert, and Stillwagon knowingly falsified documents.

Next, the Government presented evidence that Naiditch, Gilbert, and Stillwagon falsified these documents with the "with the intent to impede, obstruct, or influence the investigation or proper administration of any matter." Naiditch testified that he was instructed to falsify the DOH surveys to meet PPD requirements and that he did so with the intent to meet the PPD requirement. 11/30/23 Trial Tr. 112:4-6, 22-23. Therefore, it may be reasonably inferred that the agents acted with the specific intent to impede, obstruct, or influence the matter at issue.

Lastly, as stated above for Counts III through VII, the Court agrees with the Government that the DOH surveys were a "matter" under the statute and that there was sufficient evidence for a reasonable juror to conclude that the DOH surveys were within the federal jurisdiction of CMS.

Therefore, the Court finds that the Government has presented evidence by which a reasonable jury could conclude that the elements of Counts X through XII were proven beyond a reasonable doubt, and the Corporate Defendants' Rule 29 Motion as to Counts X through XII is denied. Additionally, the Corporate Defendants have failed to prove that the jury's verdict as to Counts X through XII is against the weight of the evidence, and the Corporate Defendants' Rule 33 Motion as to Counts X through XII is denied.

### C. Corporate Criminal Responsibility

As stated above, the Corporate Defendants may only act through their agents, that is, their "officers, directors, employees, and other persons who are authorized by the corporation to act for it." Third Circuit Model Jury Instructions § 7.06.

Here, the Government alleged that the agents of Brighton are Sam Halper, Eva Hamilton, Susan Harrington, Thomas Lowden, John Reichard, and Jane Quinn. 12/12/2023 Trial Tr. 258:1-2, ECF No. 385. The Government alleged that the agents of Mt. Lebanon are Susan Gilbert, Margaret Zapor, Yochanon Naiditch, Martha Stillwagon, Jacqueline Partee, Tracie Benson, and Vivian Miller. 12/12/2023 Trial Tr. 258:3-6, ECF No. 385.

Therefore, in order to find the Corporate Defendants guilty, the jury had to find that the Government proved beyond a reasonable doubt: (1) that each of the elements of § 1035(a) and § 1519 were committed by an agent of Brighton and Mt. Lebannon; (2) that each of the acts committed were within the course and scope of employment or agency given to the agent by Brighton and Mt. Lebannon; and (3) that the agent committed each of these acts with the intent to benefit Brighton and Mt. Lebanon. Third Circuit Model Jury Instructions § 7.06.

Here, for the reasons discussed above as to the particular counts, the Government presented sufficient evidence by which a reasonable jury could conclude that each of the elements of §

1035(a)(1) and § 1915 were committed by at least one agent of Brighton and Mt. Lebanon. Based on the Court's analysis above, it was reasonable for the jury to conclude that Halper, Hamilton, and Harrington committed each of the elements of § 1035(a)(1) on behalf of Brighton and that Hamilton and Harrington committed each of the elements of § 1519 on behalf of Brighton. Further, it was reasonable for the jury to conclude that Naiditch, Gilbert, Stillwagon, Benson, and Partee committed each of the elements of § 1035(a)(1) on behalf of Mt. Lebanon and that Naiditch, Gilbert, Stillwagon, and Benson committed each of the elements of § 1519 on behalf of Mt. Lebanon.

Outside of arguments surrounding element one, which the Court finds was satisfied for the reasons discussed in detail above, the Corporate Defendants focus their arguments around the third element. Specifically, the Corporate Defendants argue that the agents of Mt. Lebanon, including Naiditch and Stillwagon, were inflating the hours they were working in order to steal money from Mt. Lebanon, not to benefit Mt. Lebanon. Rule 29 Reply 20; Rule 33 Mot. 20-26.

Turning to the second element, the Court agrees with the Government that it presented sufficient evidence for the jury to find that the agents were acting within the course and scope of their employment. Rule 29 Resp. 19-20, 23, 29-30.

Turning to the third element, the Court again agrees with the Government that it presented sufficient evidence for the jury to find that the agents acted with the intent to benefit Brighton and Mt. Lebanon. The Government presented evidence that these agents acted to ensure that Brighton and Mt. Lebanon met the PPD requirement and did not receive penalties from CMS, so that these facilities could continue to participate in the Medicare and Medicaid programs. Despite arguments from the Corporate Defendants that agents of Mt. Lebanon acted with the intent to benefit

themselves, i.e. receive pay for hours not worked, that argument is one of credibility that is left to the jury and is not one for the Court to consider when deciding the pending Motions.

Lastly, the Court acknowledges that Defendants Halper, Hamilton, and Gilbert, were acquitted by the jury for the same charges.  However, it is still proper for the Court to consider the evidence against these Defendants when determining corporate criminal responsibility.  *United States v. LBS Bank-New York, Inc.*, 757 F. Supp. 496, 501 (E.D. Pa. 1990).

Therefore, the Court finds that the Government has presented evidence by which a reasonable jury could conclude that the employees who committed the acts constituting the required elements of Counts II, III through VII, IX, and X through XII were agents of Brighton and Mt. Lebanon, and the Corporate Defendants' Rule 29 Motion is denied.  Additionally, the Corporate Defendants have failed to prove that the jury's verdict as to Counts II, III through VII, IX, and X through XII is against the weight of the evidence, and the Corporate Defendants' Rule 33 Motion as to Counts II, III through VII, IX, and X through XII is denied.

## IV.    CONCLUSION

For the reasons discussed above, the Corporate Defendants' Motions are denied.  An Order of Court will follow.

BY THE COURT:

*/s/Robert J. Covlille*
Robert J. Colville
United States District Judge

DATED: June 3, 2024

cc: All counsel of record