IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) |
| COMPREHENSIVE HEALTHCARE | ) Case No. 2:21-cr-00079-RJC |
| MANAGEMENT SERVICES, LLC | ) |
| d/b/a Brighton Rehabilitation and Wellness | ) |
| Center, | ) |
| | ) |
| and | ) |
| | ) |
| MT. LEBANON OPERATIONS, LLC | ) |
| d/b/a Mount Lebanon Rehabilitation and | ) |
| Wellness Center, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS BRIGHTON AND MOUNT LEBANON'S
SENTENCING MEMORANDUM**

While neither Brighton nor Mt. Lebanon admits guilt and both intend to challenge the verdict on appeal, they respect the jury's decision and the Court's obligation to impose a just sentence based on that decision. Here, that largely comes down to the question of fines and restitution, which turns out to be relatively straightforward. As to both fines and restitution, one of the defendants here is already bankrupt and the other soon will be—so neither has any ability to pay.

And as to restitution, the decision is even easier. The government has never been able to show that it suffered any pecuniary loss in this case, except by speculative leaps that lack any basis in fact and contradict the testimony of its own witnesses at trial. Moreover, it has never claimed that the beneficiaries in this case received care that they did not need or that Medicare or Medicaid would not have paid for at a different facility. There is thus no basis for any restitution award.

**ARGUMENT**

The touchstone of federal sentencing is Congress's directive that courts impose "a sentence sufficient, but not greater than necessary" to accomplish the rehabilitative and retributive goals of sentencing. 18 U.S.C. § 3553(a). This Court's mission, therefore, is to select a sentence that is just right—neither more lenient nor more punitive than needed given the personal characteristics and background of the defendant and the circumstances of the crime. *United States v. Tomko*, 562 F.3d 558, 575 (3d Cir. 2009) ("Here, the record demonstrates the District Court's thoughtful attempt to tailor the off-the-rack Guidelines recommendations into a sentence that fits [the defendant] personally. Where it believed the Guidelines recommendations too large or too small—for example, in the advisory ranges for imprisonment and fine—the Court took care to explain why this was the case before making the adjustments it felt necessary."). In short, "the punishment should fit the offender and not merely the crime." *Williams v. N.Y.*, 337 U.S. 241, 247 (1949).

In this case, because the two remaining defendants are corporations, the presentence investigation report ("PSIR") does not involve the usual system of guidelines levels and criminal history categories. Instead, the Guidelines point to a plethora of factors which may impact the Court's assessment of a fine. For the most part, neither Brighton nor Mount Lebanon contest at this sentencing phase the information provided in the PSIRs, both of which ultimately conclude that neither entity (given their financial positions) has an ability to pay a fine. (ECF No. 433 ¶ 65; 434 ¶ 51.) Both Defendants agree with that assessment and believe that the financial information provided by Probation adequately demonstrates their inability to pay. For that reason, this Memorandum focuses primarily on the issue of restitution, though some of the arguments below also bear on extenuating circumstances and offense severity—militating against a higher fine amount.

The Court resolves disputes over the amount of restitution under a preponderance of the evidence standard. 18 U.S.C. § 3664(e). The government bears the burden of proving the amount of restitution owed. *See United States v. Bryant*, 655 F.3d 232, 254 (3d Cir. 2011); *see also United States v. Umana¸*713 Fed. App. 106, 110 (3d Cir. 2017). Here, the government cannot demonstrate that any restitution at all is due.

**A.     The government cannot show that the alleged fraud had any impact on federal benefits payments.**

Critically, the government has never claimed or attempted to prove that any patient received improper care at Brighton or Mt. Lebanon because of the charged conduct. Instead, the government would like this Court to believe that, had Brighton or Mt. Lebanon fully disclosed the hours and days worked by its staff, they would have been excluded from participation in federal health benefits program and thus stopped receiving any federal payments. But that is purely speculative.

The alleged falsifications at issue here were made in unsworn state forms that the Department of Health itself has acknowledged are merely "tools" for surveyors to evaluate staffing. It is also clear from the factual record that when a facility was found to fall below 2.7 PPD, the most that was ever likely to happen was the issuance of a state tag and the formulation of a plan of correction. And the Prosecution's own witnesses—including Susan Harrington—and that of the Defendants' expert established that the PPD calculations for both Brighton and Mt. Lebanon provided to the state generally under-reported actual staffing hours.[1] Needless to say, this

---

[1] The sole testimony about *federal* sanctions for insufficient nurse-care hours concerned a "federal staffing citation" in September 2019 issued to Brighton. *See* 11/20/23 Tr. at 131-32. But there was no evidence that this federal citation was related in any way to the alleged falsehoods by Brighton or Mt. Lebanon in the nurse-care hours forms or that there was any reasonable likelihood such a federal citation could affect Medicare and Medicaid payments to the defendants.

does little to prove that the government experienced any financial loss for which it should now be compensated.

But there is plenty of evidence to the contrary. The alleged falsehoods on nurse-hour forms here were not directly related to any decision of CMS regarding Medicare and Medicaid payments. The federal nurse-hours standard, unlike DOH's 2.7-PPD standard, does not have an average minimum "PPD" number. *See* 11/20/23 Tr. at 163-64 (Susan Williamson's testimony). Indeed, Evan Shulman, CMS's representative who testified at trial, admitted that a facility's noncompliance with a "state [PPD] number does not necessarily constitute noncompliance with [the] federal [standard]." *See* 12/8/23 Tr. at 214. And he specifically admitted that "missing the 2.7 [PPD state standard] on its own would not constitute federal noncompliance." *Id.* at 215. Indeed, Shulman did not even ***recognize*** DOH's PPD form. *Id.* at 215-16. His "office doesn't get any [DOH] survey documents." *Id.* at 216.

Moreover, even if potential *indirect* effects from state-level sanctions for insufficient "direct care" nurse hours are considered, Susan Williamson's testimony shows at most a highly improbable effect on Brighton's or Mount Lebanon's ability to receive federal funds. She admitted that, in DOH's history of monitoring over 600 nursing home facilities in Pennsylvania from January 2014 to March 2020, on only two occasions did DOH impose "admission bans" as sanctions—neither because of PPD violations. And no license revocation at all occurred during that period. *See* 11/20/23 Tr. at 196-97. In fact, Williamson admitted that "almost never" would any admissions ban sanction (or a more severe sanction) occur. *See id.* at 199. Williamson also clarified that DOH relied on the forms purely for its own state-level decision-making, which says nothing about their materiality to Medicare and Medicaid's health care benefit programs (which

4

are governed by a different nurse-hours standard than DOH's "2.7-PPD" standard), *see* 11/20/23 Tr. at 163-64, 222; 12/8/23 Tr. at 214–15.

Even more tellingly, the government's actual actions here disprove its claims. Since the government began this investigation years ago—and even after Brighton and Mt. Lebanon were convicted—neither Medicare nor Medicaid has taken any steps to cut off the flow of funds to either facility. Plainly, then, the alleged inaccuracies on these forms were not that important to federal or state regulators, even after they became the subject of an ongoing federal criminal investigation. To now claim that regulators would have been so concerned about the true staffing numbers if they had been accurately reported that they would have cut off millions of dollars of benefits to hundreds of Pennsylvania citizens makes no sense in this context. If those numbers were not concerning enough to regulators to cut off payment even after they were allegedly concealed and later became the subject of criminal charges and convictions, there is no reason to think they would have impacted payment decisions earlier either.

Thus, there is no evidence to support the government's theory of restitution, because there is no evidence supporting its claim that the facilities would have been kicked out of the programs if they had not made false representations with respect to staffing. Indeed, the government has previously disclaimed any need to prove that the alleged misrepresentations here directly influenced any payment decisions. (ECF No. 418 at 11–12 & n.1; ECF No. 421 at 14 & n.3.) Having previously refused to assume the burden of showing that the charged conduct changed the amount of money federal programs dispersed, the government cannot now claim that all funds disbursed during the relevant period were improperly paid.

At bottom, the government asks this Court to pile inference upon inference, assuming that the Department of Health would take more severe remedial measures than it had ever taken, that

those would have led to Brighton and Mt. Lebanon's exclusion from Medicaid and Medicare based on a statistic that federal authorities have never considered, and that this would have led Brighton and Mt. Lebanon to receive fewer or no federal funds. And it does so after having affirmatively declined to prove that it would have paid less absent the alleged misrepresentations. The Third Circuit has forbidden courts to base their restitution awards on this type of speculative evidence. *United States v. Fallon*, 470 F.3d 542, 549 (3d Cir. 2006) ("Even if but for causation is acceptable in theory, limitless but for causation is not. Restitution should not lie if the conduct underlying the offense of conviction is too far removed, either factually or temporally, from the loss."). This Court should therefore reject the government's claim to restitution in this case.

**B.     The benefits paid to Brighton and Mt. Lebanon were paid for legitimate medical services and so the "victim" in this case experienced no financial loss.**

Relatedly, the Third Circuit has also explained that "[r]estitution should not be ordered in respect to a loss which would have occurred regardless of the defendant's conduct." *United States v. Fallon*, 470 F.3d 542, 549 (3d Cir. 2006). In other words, if the government would have spent the money anyway, it is not entitled to restitution. Thus, in an analogous case, the government was not entitled to restitution where it would have paid out benefits to certain food stamp recipients regardless of the defendant's actions. *United States v. Kadhem*, 580 F. Supp. 3d 132, 137-138 (W.D. Pa. 2022).

So too here. The government has never claimed that any of the patients treated at Brighton or Mt. Lebanon did not need the care they were provided. Indeed, as discussed above, the government argued that it need not provide any evidence that payments would not have been issued but for the alleged misrepresentations. The reason for this is obvious: If the patients were not treated at Brighton or Mt. Lebanon, they would have been treated elsewhere—and the government

would have had to pay for that care. Thus, the government is not out any money and is not entitled to restitution.

### C.     Neither Brighton nor Mt. Lebanon has any ability to pay.

Finally, as the Court must in assessing an appropriate fine, determining a proper restitution amount also depends in part on ability to pay. *United States v. Williams*, 974 F.3d 320, 377 (3d Cir. 2020). The PSIRs outline Brighton and Mt. Lebanon's financial conditions in detail, but it is worth taking a moment to highlight a few items that go directly to their ability to make any restitution payments.

To begin with, as both PSIRs highlight, this conviction will cause both facilities to be excluded from federal health benefit programs, cutting off their largest and most important source of revenue. Without that income stream, neither facility will be able even to keep up with its operating expenses, let alone make any restitution payments. In fact, Mt. Lebanon is already in bankruptcy because "its debts outweigh its assets." (ECF No. 434 ¶ 73.) This alone militates against any restitution award.

As to Brighton, the financial picture is similarly dire. As the PSIR suggests, Brighton has operated at a net loss for nearly every month since November 2023. (ECF No. 433 ¶ 60.) It owes nearly $50 million in debts, not including any fine or restitution awarded in this case. (*Id.* ¶ 62.) And, as discussed above, it is about to lose its primary source of income. Brighton thus has no ability to pay any substantial restitution award, and the Court should not impose one.

## CONCLUSION

This was a complicated case, raising complex legal issues and prompting a lengthy trial. But the sentencing process should be comparably simple. The government has not shown that it suffered in pecuniary harm because (1) it cannot show that either facility would have been

excluded from a federal benefit program but for the alleged misrepresentations here, and (2) it would have paid out the benefits in question regardless of whether it was to Brighton or Mt. Lebanon. Finally, even if neither of those things were true, restitution would still not be appropriate because neither defendant has any ability to pay. This Court should therefore impose either no fine or restitution or only minimal amounts.

Dated: May 6, 2025                                Respectfully Submitted,

*/s/ Colin J. Callahan*
Colin J. Callahan, P.A. ID No. 328033
Flannery Georgalis, LLC
436 Seventh Avenue, Ste. 2100
Pittsburgh, PA 15219
(412) 213-4246
ccallahan@flannerygeorgalis.com

*Counsel for Defendants Comprehensive Healthcare Management Services, LLC and Mt. Lebanon Operations, LLC*